Next case this morning is 24-1480 United States v. Meier. I'm not sure exactly which one. Defense Counsel will educate me. Defense Counsel, please make your appearance and proceed. Thank you, Your Honor. May it please the court. Counsel, my name is Shira Keeval. I'm an assistant federal public defender in Denver and it's Christopher Meier is my client. I'll endeavor to save one minute if I'm able to. At sentencing, the government successfully argued that Mr. Meier produced the original child pornography videos that he later edited and posted online. But the government did more than that. It also convinced the district court that Mr. Meier produced the by distributing images and videos of a girl their own age, stripping, having cam sex, and at least in one case masturbating on camera in order to entice the teenage boys to masturbate on camera in return. Because the district court found these factual allegations to be true, it plainly should have applied the seven-level enhancement at USSG 2G2.2B3E to each substantive count instead of the reference to the production guideline. I'm sorry to interrupt you so quickly. But you said something that I think is really central and that is that your interpretation of what the district judge said was that he approved that. And I think you're relying on page 56 of the Do I think it is clear, especially since we're under plain air, that when the judge says... Because the judge, of course, hasn't seen... I mean, nobody has seen these videos. Prosecution hasn't, law enforcement hasn't, and the judge certainly hasn't. And so I can interpret... I don't have page 56 in front of me, but my memory is that the judge says, well, the accounts by the boys and the accounts by Mr. Meier are all consistent with the fact that that the boys had been furnished either a video or a picture of girls. And so I think there's a couple of problems with that. I mean, it's not a trigger for the seven-level enhancement to send pictures of attractive 13-year-old girls. And it's really not even a trigger if they were nude or in a state of undress. It's pretty specific. They have to either be masturbating or insidiously exposing their genitalia. And I know you mentioned that you think that one of the count, I think it's count four, that the girl was masturbating. I don't know that the judge ever said or the boy ever said that the girl was actually on camera. I think he said that we were mutually masturbating. We don't know if the girl was doing that live on camera or simulating it, talking about it through a black screen. So, but any of that, the key question that I'm trying to ask is on 56, does your argument all stem that we have to embrace your interpretation of rule of page 56 as a specific judicial finding that these, that Mr. Meyer had distributed these, at least one under relevant conduct, of these girls that had lasciviously exposed their genitalia or were actively engaging in the act of masturbation in order to find plain error? Your Honor, I think that that's an important factual finding, but I also think that my argument depends on at least one more factual finding, or at least an explanation of the factual findings. And I recognize that it's a bit of a complex argument, if you could bear with me. On page 57, the district goes on to say the court will also incorporate into its findings the factual statements as set forth in the pre-sentence investigation report and in the government's briefing on this issue. So I think that if the district court had not made that final statement, I'd be in a much, much worse position, but it does. So, you know, what happened below is there was, you know, everyone agreed what the evidence was, but there was a disagreement. Does the PSR make the specific finding that Judge Bacharach is talking about? I don't recall it doing so. And I mean, as you point, all right, then, if you then referencing the PSR is not going to solve the problem, is it? So it's a combination of the PSR and the government's factual allegation. And I understand the question, if I could have just a moment to answer it. What's really important here is what the argument was making that was being made and what was being resolved. And if you look specifically, you know, the defense made a number of arguments. Basically, you know, the government says, look, Mr. Meyer says he produced all of these. And the defense's response is, okay, he says stuff, but what he says, who knows if it's real? And then it says, and even with some of the counts, he gives lots of specific details, but there's some counts where he doesn't say really anything at all, other than this is original content. So for example, count five. And the government's response is to say, Mr. Meyer's, you know, he doesn't say details there, but the victims give details. And the victim's details correspond with details he's given for other counts. And when you look at his statements and the details there, and the victim's statements and the details there, you can see there's this consistent modus operandi. And you can presume based on his production of the more detailed videos that he produced the other ones as well. That argument was accepted by the district court, and it only works if what the victims are saying is true. If the victims are not giving true statements, then who cares if there's a correlation between what Mr. Meyer says and what the victims say. So the finding, the finding that the factual allegations, that we are adopting the factual allegations in the government's brief, and then it goes on, it gives a lot of explanations. If you look at page 54 and page 56 of Volume 3, many of the statements obtained from the victims contain details that match with what Mr. Meyer is representing. Many of the statements, again, are detailed and then align with the and consistent with Mr. Meyer's online representation that he enticed minor boys to perform sexually using images or videos of a girl. And indeed, it appears that this is exactly what he did. But it's not enough that they're a girl. I mean, to Judge Backright's point, it's not enough that they're a girl. There has to be child pornography for your argument to work. And frankly, as I sit here and I'm following the steps of your argument, we're under clear and obvious error here. I mean, your argument has so many steps to it. How in the world do you make, I mean, it seems to me that's undercutting the view that would have been clear or obvious to the district court that this application applied. I'm struggling to understand that. So I think there's, that's a two-part question you're asking about, where's the sexually explicit conduct on video? And then how is this clear or obvious? And I'll start with the second one. You know, the government doesn't make that argument, doesn't say there's too many steps here. The government, that's not what I believed I was coming to respond to, but I'm happy. Well, the government said it's not clear or obvious error. And so that's good enough. Let's go. So, you know, I think this court's decision in Cantu shows that it can be a really big multi-step process, right? Cantu is like, well, nobody asked the court to go look at Oklahoma's schedules and compare them to the federal schedules and look at Oklahoma state law that explains, you know, how the statute is or is not divisible. And that doesn't matter when it comes to plain error, as long as all of the steps are plain. That's a legal argument. We're talking about going back to Judge Bacharach's point. There's nowhere in the record where the district court says these, these are minors. Okay. They talk about girls, you know, bait girls, all that, but nowhere does it says they're minors. Nowhere did the district court expressly say that they were engaged in these explicit sexual acts that the statute speaks to. And so, so it's one thing to be talking about. You need legal steps to do something. It's another thing to say, is there a factual finding that you can hang your hat on? And unless I'm missing something, tell me if I'm wrong. There is no explicit factual finding here. There's no statement out loud from the district court judge that these are minors or that they're engaged in sexually explicit conduct on video. I agree with that, but I will explain why that finding nonetheless is clear in the record. The government says, in its brief, that Mr. Meyer had a consistent modus operandi throughout his sexual exploitation. That's volume one, page 50 to 51. It says he posed as a young girl, young girl, to talk to minor boys online and encourage and entice them to disrobe and masturbate for the camera. That's the consistent modus operandi. That's R1-175. And it says he repeatedly uses the word girl in his posts. And you can infer from all of this modus operandi that he's referring to streaming a video of a girl the same age as his victim in order to induce the victim to disrobe and masturbate. That's R1-192. So when the district court says the factual allegations in the government's brief, I'm adopting those. Those are my factual findings. There is a minor girl. The government's language in its answer brief about female and women, it did not use that language below. It used the word girl consistently. It also explicitly used the word young girl and the same age as his plain error here. Because when this whole conversation was taking place, it was related to production. It had nothing to do with this application. And so one can be more precise when you know that there are consequences to being precise. And so the fact that the government is throwing around the word girl and the fact that we're talking about that it may have been the same age as the victims, the boys who are masturbating, I, that's a lot to infer. And that's a lot for us to say that the court clearly and obviously erred. If everybody is looking at A, here's the hand, look at A, and then we're now talking about B and trying to transplant language that went on in the context of an argument about A into B, that's hard. And let me just ask a legal question. And I, what, you know, after the Supreme Court in our Davis, in its Davis case, said that you could have factual disputes as it relates to plain error, which our case law had for a long time held that was not true. Okay. Well, since then, are you aware of any case by us where we've interpreted what that plain error standard looks like post Davis? And Your Honor, I want to make clear, I'm not making a plain factual error argument. A plain factual error argument would be an argument that the evidence compelled a certain finding. Plainly compelled a finding. I'm saying the finding happened. And because the finding happened, there was plain legal error and a failure to apply the enhancement. If the finding happened, then there's no factual error. Okay. So you're saying that if we look in this record, there is a, you're saying it's not explicit, but there is a finding by the district court that not only was it a minor, but that minor was engaging in conduct that was covered by the statute. That's what you're telling me. And because that is true, that it was a legal error by the court not to apply the, what would have been the natural implication of those factual findings? Correct. Your Honor, that is my argument. Okay. And so that last bit, I haven't had a chance to explain where is that factual finding of sexually explicit conduct on video? It is a detail that is given by one of the minors who is part of the relevant conduct, page R2, 65 to 66. And the minor victim recalls mutually masturbating on camera. So doesn't say masturbating in the chat, talked about masturbating, says mutually masturbating on camera. That, that has one meaning. That means you were masturbating on camera. No, it doesn't. As to Judge Bachrach's point, you could have had that, you could have had this flip down and, and, and you, you, you could have had, there could have been no visual at all, or it could have been entirely simulated. I mean, we were mutually masturbating on camera. Well, it could have been, you know, the, the, the, a simulated masturbation. I, I just don't read it as having one meaning and it needs to have one meaning. Does it not for your argument to work? Yes, Your Honor. It needs to have one meaning, but it, he, on camera is not the same thing as we mutually masturbated. I chatted with girls while I was masturbating. We masturbated together. It doesn't say that it says mutually masturbating on camera. And so if it is stim simulated, but it's on camera, if it's actually happening, but if it is on camera, that meets the definition of child pornography, because it's happening on camera. Simulated meets the definition. If it's on camera, then it does. It's, if it's on camera, if it's off screen, I agree with you that it doesn't, I agree with the government, but if it is on camera, it's on camera. And that's for the big girl, right? Excuse me? I didn't mean to interrupt you. I'm sorry. I just didn't hear the question. What you're talking about is it has to be on camera for the big girl as well as the boy. Correct. And that's what mutually masturbating is. This is a really, really specific statement from a victim. And the government is relying on the truth of the details. And I understand they're making a different argument, but their argument is that the modus operandi is specific enough that you can infer from one production that he produced the other. That's the government's argument below. So even though it's a different argument, the sub argument, the basis of the government's argument is that these details are true. These victims are telling the truth. Their details are important. This is just not what every capper does of just trying to convince a kid to masturbate using a big girl. This is really specific. And I see I'm out of time. Chief, can I ask one question? Of course. I'm sorry to do this again. So first of all, remind me which of the counts this is. Is this count? It's not count six. It's relevant conduct. No, I know that. So what you're talking about, the mutual masturbation on camera, which boy refer to that? It is a victim who is not a victim of one of the substantive counts. Okay. So you're saying, so first of all, did you make this argument? I remember you making an argument about count six, of having sex, cam sex with my girl, and you use that as relevant conduct. I don't remember you using mutual masturbation on camera as relevant conduct to say that that was going to be interjected for all six of these counts. Your Honor, I made a mistake in the opening brief. And I thought that I had three statements from the same victim. And I clarified that in the reply brief that actually I had three separate statements. And I do focus on this in particular in the reply brief. And it's also one of the statements that the government, it's in one of their footnotes in their answer brief. So they were perfectly aware of this statement. They have different reasons. They thought it should be disregarded. Well, you go ahead, Judge Babcock. I'm sorry. No, I apologize. You go ahead, Chief. Look, it's their awareness of our statement doesn't make an argument. I mean, if the first time you put this is in a reply brief and make an argument about it, that's a problem. I mean, the fact that they knew the statement existed doesn't, and your whole argument here today is predicated on this statement. And yet you didn't put it in your opening brief. And so why is it this whole thing? Wait, I mean, the government hasn't had a chance to respond to it except for now. And Your Honor, we made a broader argument in the opening brief that I think incorporated this, which was that a bunch of the different statements and victims were describing sexually explicit conduct. And in particular, I mentioned the victim of count six and referred to these pages in the pre-sentence report and talked about how him saying cam sex with his girl correlated with that victim saying masturbating with, excuse me, not mutually, corresponded with the victim saying masturbating with attractive girls. I recognize that I did not use this specific quotation in the opening brief. I do not think it is waived. I think I have made it. I think the government has adequate opportunity to respond to it now. And now it's not good enough. It's never been good enough. I mean, for under our case law, that's not good enough. And the reality is the argument you talked about as it relates to count six did not have that explicit sexual activity that you're now saying is so apparent in this relevant conduct that was in your footnote. I mean, that is in now in your reply brief, right? Council didn't have that. Again, Your Honor, I made a broader argument and the government says this, that's not good enough. And so now I've narrowed it down. And you've narrowed it down in your reply brief. And I'm allowed to narrow an argument. I'm not allowed to bring up a new argument. I'm allowed to narrow an argument. And that is what I did in the reply brief. And I'm certainly focusing on that narrower argument now because I think it's much more persuasive. And that's why I'm doing it at oral argument. It is not waived. I hear you. Do you want to say something, Judge Baccarat? Well, I hate to bombard counsel, but I do want to ask one follow-up question. I think it'd be helpful if you don't mind. So let's say, so in one of the other allegations that one of the boys says just that, that we mutually masturbated. And now I want to go back to sort of where we started in the first 10 seconds of the argument. And that is the argument that, well, interconnected with your overarching argument that, well, it's relevant conduct. And so in order to trigger the enhancement for each of these six counts, the relevant conduct has to be, the conduct has to be relevant to each one of these counts. And so let's say we take counts one and two. Well, these boys were saying that they were talking to a black screen. Most of the boys of the, I guess of the seven boys in count three, the five boys in counts one, two, four, five, and six. Most of those, well, none of those by recollection involve mutual masturbation on camera. Most of them involved black screen. And so if you're hanging your hat for relevant conduct on page 56, and as the linchpin to say, well, this was a modus operandi, this is relevant conduct for each of the boys. How can you do that factually if what you're hanging your hat on is none of the six boy victims and it's something that doesn't even arguably apply to any of the seven victims on count three, the other victims on counts one, two, four, five, and six. So in page 56, it doesn't say that. I mean, page 56, as I think you can only acknowledge, I believe, and that is just talked about the consistency of the accounts that he furnished, you know, a video sort of picture of a girl. But now for the relevant conduct, it's not that. It's this very specific mutual masturbation on camera. How can that be relevant conduct for the six boys? It is plain under this course case law that relevant conduct for 2G2.2 is the entire course of conduct charged and uncharged. I have the case site in my opening brief. The government does not argue that that's wrong, and I don't think it could. I think it's an unusual case because there's more than one distribution count. But if the government's argument below had basically been like everything in the PSR is relevant conduct and the district court had disagreed, the government could have appealed and it 100 percent would have won. There's no question that this was an entire course of conduct that's relevant conduct here. Certainly we have the finding that he's operating with a single modus operandi. We have the overarching conspiracy, which is not limited to this Tor network. It's all of his activity doing this capping and posting. I don't think there's any way to view the record otherwise. The government's only argument about why maybe that wouldn't be true is this very, very bizarre waiver invited error argument that doesn't work because I'm not challenging some successful argument that I made that caused the district court to make an incorrect ruling that now I'm trying to undermine on appeal. They have absolutely no argument why this isn't all relevant conduct. I believe that's your question. You fully answered it in a very informative way. Thank you, counsel, and thank you, chief. I have one clarification. When you're speaking in reference to count six and the argument in the reply brief about the mutual masturbation, is that distinct from the count six where there's a comment, and I don't remember if this is his comment, the defendant's comment, but he had a girl with whom the victim engaged in cam sex? So count six, Mr. Meyer described cam sex with his girl. This is his- That's count six. That's his own statement. So this mutually masturbating on camera is not a child who is part of counts two through six. I think it's a child who's probably count one certainly relevant conduct. The other comments are really important. I'm just asking, is that cam sex? Are you relying on that particular comment from him? Do you think that's- I think cam sex with my girl is sufficient. I think masturbating with attractive girls is pretty close, but I think that what pushes it over the top is mutually masturbating on camera, and with that one, that's enough. Thank you. Thank you, counsel. Let's hear from the government. Thank you, your honor. May it please the court, Kyle Brenton on behalf of the United States. I think the court's questioning has helpfully focused what Mr. Meyer is actually arguing, and I think we've kind of arrived at the point where the crux of his argument is that the district court actually made a factual finding by implication that no one asked it to make, and that in fact requires two, at least two, very specific underlying factual predicates to be met. Number one, that this bait girl content displayed a minor, so a girl under the age of 18, and number two, that the conduct that was depicted in that in those videos meets the definition of sexual exploitation of a minor, which is to say intercourse, masturbation, lascivious exhibition of the genitals, and that the district court somehow made this finding of both age and conduct as to at least one victim, and that then that can be generalized across every victim, even where the evidence as to most of the victims, as Judge Bachrach noted, is directly counter to those factual findings. I think, while I admire the ingenuity of the guidelines argument here, I think we are well afield of a conclusion that the district court committed plain error in failing to make this factual finding that no one asked it to make. I'd like to address first the evidence itself and touch on count three and then address the relevant conduct argument. Of course, I'm happy to answer any questions the court has. I think when we're talking about the evidence, I think it's helpful to keep in mind there are only two repositories of actual factual information about this conduct and this content. Obviously, we've had a lot of talk about what the district court said, what the government said. Anything the government or the district court or the PSR said ultimately had to derive from these repositories of actual factual information. And, as the court noted, the only people who know what was in this content are the victims, all of whom were only interviewed years later, barely remembered it in only the vaguest terms, many of whom declined to even speak with investigators, and Meyer himself, who, of course, never was willing to decrypt his own devices in a way that would have allowed the government and the court to actually view this information. So, in light of that, we have to really look to the statements of the victims in the interviews and Meyer's statements in his marketing copy on his website about these videos to see whether, as to any victim, there is sufficient information to find by a preponderance that the girl was a minor and that it showed the content that is sexual exploitation. Let me pause you there for a second. If the government had put a certain cast or spin on the facts that were in the PSR or the facts that Mr. Meyer offered, in other words, specifically focusing on this question of modus operandi, I understood defense counsel in part to be referring to the government's statements before the trial court. Well, if the government puts a certain spin on PSR facts—and I don't mean that in a derogatory sense, I mean that in just an interpretation or an inference of what those facts suggest—and then the district court says, oh, yeah, I agree with that, and then says, that's my finding, even if we could, sitting here now, second-guess whether the facts in the PSR are actually to that effect, doesn't that really undercut the fact that the district court, when it made its finding, understood them to mean that based upon the government's statements? In other words, what I'm getting at is it seems to me that the government's statements are not entirely relevant. You talked about two repositories of facts. Yes, true, hard historical facts, but if there are inferences to be drawn from those facts and the district court relied on certain inferences that the government made from those facts, why isn't that the world that we're stuck with here? Well, your honor, I certainly agree with you in the abstract that what you've described in terms of the government's putting an inference or characterization on facts in the PSR, the district court accepting that. In some cases, I think that may be true, but I think that, you pointed out in questioning my opponent, context matters. The state, the spin, whatever, I will also use that word in a non-pejorative sense, but the spin that the government was placing on these facts in their argument was not directed in any way, shape, or form to whether this content that nobody ever saw actually met the definition of sexual exploitation of a minor, nor was the district court's comments in adopting those, whatever the spin may have been. All of that discussion went to an entirely different question, which was the question of whether it is reasonable to infer that Meyer was the creator of this content. Every single finding inference spin, however you want to put it, goes to that question, and that is a very different question from the very specific and frankly crucial question of whether material constitutes sexual exploitation of a minor. If this issue had been raised, if even the ghost of this issue had been raised, all of that discussion would have looked very different, because it certainly never entered anyone in the government's mind, it never entered the defense's mind, it never entered the district court's mind, whether any of this would ever be read in the way that Meyer now suggested should be read in terms of making findings about what this conduct was. Mr. Braley, can I probe you a little bit about that? The judge certainly has an obligation, irrespective of what the probation officer says, irrespective of what counsel says, to determine what is the appropriate level of, what is the appropriate enhancement. Is it a that, well, the pre-sentence report says that one of the boys was mutually masturbating with a girl on camera, and the judge says, well, I'm adopting that. Well, maybe the judge shouldn't have done that, but the judge is, and maybe the judge made a mistake in doing that. But if we don't lightly say, well, a judge's factual finding we're going to disregard because he didn't really pay enough attention to it, the judge made a finding, hypothetically, and then you go to the guidelines, and then it's just a pure legal issue. As defense counsel says, the judge has to apply the enhancement under B-3 that has the greatest level of enhancement, and if those findings then would have translated into a seven-level enhancement, why does it matter if it was dicta or whether or not the judge didn't need to make a finding about the big girls? The judge did make it, and so why isn't that a problem if the judge did adopt the pre-sentence report, and the pre-sentence report does contain this information about the boy mutually masturbating on camera with this girl? Well, Your Honor, I want to, in answering that question, I mean, I want to take a step back. We absolutely do not concede that the pre-sentence report contains any information sufficient to conclude by a preponderance that any one victim, either on account or any victim mentioned who was not part of account, saw or was exposed, was distributed bait girl conduct that meets both the requirements of age and conduct. Now, obviously, Chief Judge Holmes asked a lot of questions about waiver, about this particular discussion, this particular victim report that Mr. Meyer appears to be almost entirely relying on, though it wasn't in his opening brief. I think the waiver point is well taken. I will go ahead and address that factually because I think I have an obligation to, because I do not believe that that report meets the standard of preponderance, and I certainly don't believe that it plainly and obviously meets the standard of preponderance. So here we're talking about a victim who's identified in our brief with the identifier MVNI3. It's on pages 66 and 67 of the PSR. This victim was 11 or 12 years old at the time. He reported that he chatted with a girl who was, quote, older than him, that they mutually masturbated. He said he never saw her face, and importantly, he also said that he engaged in this kind of conduct online at least two or three other times, and so he couldn't say for sure whether the instance that he was reporting was Mr. Meyer or not. So I think the problems with this report, and we can talk about each individual, each victim individually, and I can show you why I don't believe they meet preponderance for this one. First of all, he hasn't said how old the girl is. He's only said that she's older than he is. Certainly he's on the younger side, no question about that, but again, where the question is, by a preponderance, does this establish that the girl is a minor? The answer is no. The information that he didn't, he never saw her face, suggests that it's entirely possible, as Chief Judge Holmes suggested, that she may not have been on camera, that they could have been, it could have been audio, it could have been, you know, he could have just been listening and a blank screen as most of Meyer's other victims were, and the fact that he couldn't even be sure that this interaction was the basis, what was ultimately with Meyer and what gave rise to the particular video that was being shown to him, all of that undermines a showing by a preponderance, and it most certainly undermines, I mean, that's a thin reed for preponderance alone. It is far too light to sustain the weight of plain error. Let me, let me, I'm sorry, go ahead, Judge Moritz. Well, I just, you suggested earlier that you, you were quite certain that if, if this had been raised as it should have been raised below, that this would have been a wholly different discussion, and I guess I push back on that in terms of just all of the government's argument on the, MO issue seemed to indicate that they fully accepted these facts as, as the district court accepted them. Nobody was challenging age, nobody was challenging these young victims, nobody was challenging that there was sexually explicit conduct, and I don't know, you know, you can say that this is, this particular young man's testimony was indefinite on pages 66 and 67, but when he said we mutually masturbated, whether he could see your face or not, it's pretty clear what he's talking about, and the government certainly allowed the district court to adopt all these findings, seemed to have no concern about it. I, I question whether, if someone would have questioned the victims' ages for whatever reason, if the government at that time would have had any concern about that. I just... Well, Your Honor, I... That's not the approach the government was taking. It allowed the district court to pull all of this into the record, it, you know, and the inferences that you can make from it, presumably, and didn't object to that. Well, the, the argument that the government was making was that Meyer was the producer of this material. That is the fundamental finding that the government was asking the court to make in order to apply the cross, the cross-reference of 2G2.2C, which then gives rise to all of the additional sentencing consequences that, that ensued in this case. But the government was also advocating for what he was doing, which was taking these young girls and, and having them engage in potentially sexually explicit conduct. The government didn't seem to question that at all, that that's what was happening. What he was doing was enticing young boys to perform. I'm sorry, but the, that the use of the girls is what we're talking about here. The use of the girls and their actions is what we're talking about. And the government didn't push back at all on what we're now talking about. Because it wasn't at issue at all, Your Honor, because the question before the district court was, did Meyer produce this content? And the answer to that, which the government advocated, was yes, but no one asked the question, did this, did the content sent to the boys, which is of course different from the content that he was convicted of distributing and ultimately found that he produced, was the content sent to the boys also child sexual exploitation? So it's okay for you to now say that on its face somehow, this, this appears to be the comment about the mutual masturbation. We can't even accept it for what it said on its face when the district court accepted it, but you're now basically saying, oh, nevermind that we said all of this could come in. What we allowed to come in isn't accurate. It's not truthful. It's not, it's, it's ambiguous. Your Honor, we're not talking about, and we're making no argument about the truthfulness of what these victims reported. Absolutely. The question is what's finding, what inferences does that support by a preponderance of the evidence? And that is what we believe. Do you need an inference when, when this young boy said we mutually masturbated together on camera, what inference do you need there? You need the inference, first of all, that the girl that he was interacting with was under the age of 18, which is not there as to this victim. And you need to, you need to exclude the possibility that he was in fact talking that, that he was talking to a blank black screen in light of all of the other evidence of Mr. Meyers. Yeah. Your best argument is about the age because we need to have the age and the, and the sexually explicit conduct together in one victim, correct? That's correct. That's your best argument in terms of what you can say about this particular fact is that it's not there is the age. I agree with your Honor. And I also think, as we've argued in the brief, it would be inappropriate, even if it was met as to this one victim, which it is not, to generalize that across every other victim by operation of relevant conduct where the evidence shows that that was simply not the case. I see that I'm over my time. I'm happy to answer any other questions the court has. Otherwise I would ask that the sentence be affirmed. I do have one question that I want to get clear in my mind. As I understand the argument and I understand it better now that it's being made by defense counsel, it turns on the fact that there was legal error. You get to that legal error by saying that, that the court, that the record reflected, the district court did make a finding based upon the record that, and even if the finding was through the adoption of the PSR, the district court made a finding that, that on it, that essentially provided the predicates for the application of the enhancement. And so it was legal error or clear and obvious error not to apply it. Well, it's sort of a two-step process. And so what I'm trying to get clear on is at the first point where it's saying, well, the district court, based upon this PSR, the district court in effect made the finding. Under plain error, are we saying that it would have been clearly erroneous for the district court not to make the finding or it would have been clear or obvious error for the district court not to make that finding and then clear or obvious error as it relates to the legal issue? I hope I'm being clear. What I'm trying to say is that there's an underlying factual thing that has to take place here. And how clear does the record have to be before we get to the legal determination? Well, I would suggest, Your Honor, it's the latter. I believe that the, that in order for Mr. Meyer to prevail, he has to run the table on quite a such that it was clearly and obviously error for the court to not make the finding he wishes the court had made. I think if he clears that bar, then it has to be clear and obvious that his guidelines calculation argument that takes 15 pages of his brief to lay out and his interpretation of relevant conduct were also so clear and obvious that the district court erred in not walking down that garden path all on its own. So that's my response. You don't take issue with that, do you? I didn't sense that you take any issue once you get past these facts. If we were to assume that these facts of the district court incorporated were sufficient for the enhanced seven-level enhancement to apply, I didn't see you taking any issue with the rest of the process that the that Mr. Meyer went through in terms of what the court would also have went through. You didn't suggest it wasn't plain. My understanding is you're disputing, you're disputing their take on these facts or their inferences that they're making from these facts. We certainly have not disputed that had the B3E finding been made, the sort of arithmetical consequences of that would have been as the defendant suggests. But let me be really clear about what we are disputing. Number one, we're disputing whether it was plain error not to make the finding. Number two, we're disputing whether a finding as to one particular victim can be generalized to every single count and every single victim as relevant conduct. As we show, even if that's not true, even just as to count three, he cannot prevail. And number three, we are disputing prong three based on our Molina-Martinez type arguments. So those are the points where we are disputing Mr. Meyer's arguments. Okay, thank you. Anything more from the panel for the government? Thank you. Anything for defense counsel before we end? All right, thank you for your arguments, counsel. Chief, can I ask one question of defense counsel? Sure. I think it's a short question. But so I just want to ask you that you're positioned on the last point. So I absolutely clearly understand that your argument on relevant conduct is that the conduct, that the finding that you identified earlier would be relevant conduct. But if the government is right, that let's say, and I know that you don't agree with his premise, that let's say count one, count two, count four, count five, count six, that all of the incidents with the counts, if we mistakenly conclude or if we conclude that the relevant conduct would not bleed over in the count three, then your grouping argument to trigger the seven-level enhancement would fail, correct? Your Honor, I haven't done the math to know whether there would still be prejudicial error if there was one count where the production cross-reference applied. I actually think that it would still lead to a guidelines calculation that was lower. But I still don't really understand the government's argument that they're making now about generalizable across every victim. We're not arguing that. As I understand it, they're saying that there was no, that relevant conduct predicate of course of conduct or that kind of thing is not present here. And therefore, you have to look at each count individually. And that the fact that there was relevant conduct does not mean that you could apply it across the board to all of these, because that would be necessary in a 1B1.3. You'd have to have either course of conduct or whatever that other similar phrase is, qualifying phrase, in order for it to work. I mean, generously, that's the argument that they're making right now. The argument in the and because I waived it, then you have to look at each named victim. And that's, but they never make any argument about how it is possible that that's actually how the relevant conduct rules operate in the guidelines. And they still haven't explained it today. Yeah, I'm sorry. I'm sorry, Chief. I just wanted to say, and that's why I preface my question by I understand that you don't agree with the government's argument about how relevant conduct would or would not apply. But I'm just asking you if hypothetically the relevant conduct bleeds over into five of the six counts, but not count three, since count three does include seven units under your, you know, seven separate episodes of the boys. And all we have to have to trigger the seven level enhancement is five or more units, obviously seven is greater than five, that even if we disregard the relevant conduct, or even if we credit the argument for relevant conduct for five of the six counts, but don't apply that to count three, then your grouping argument would not work. And your honor, I haven't done the math exactly that sounds right, I would have to sit down and double check the guidelines calculation in that case. I just still don't understand how you could get there. Okay, well, once since you're teed up here, one another part of what the government addressed, and was a question that I specifically asked, it seems to me that there are two steps to your argument. And one is that the court found, and this found that in fact, these two predicates were present, and therefore it committed legal error by not reaching the conclusion that we need to reach. Well, what if the record was not entirely clear? What standard do we judge whether the court could, under plain error, did the court have to commit clear or obvious error in not finding it? Or you're saying it found it as a matter of fact, right? I'm saying, yeah, the government's argument that it didn't, there's not enough evidence to reach the preponderance standard. That's not responsive to my argument. You know, they're not saying, okay, there was a finding, but we're challenging the finding, it was clearly erroneous, like, they're not making that argument. They're making something that is not responsive to the argument I'm making, which is this finding happened. Now, what do we do with it? Well, if well, if the if the finding comes from the district court's adoption of that paragraph, and if the underlying historical facts of that paragraph do not equal up to the legal predicates that are necessary, you lose, right? Yes, but it's not just that it adopted the PSR. It's that it adopted the factual allegations in the PSR and the factual allegations from the government. And the government says there is a modus operandi, it's young girls, it's same age as. And so even if that adopted the factual predicate from the government, you mean, as in the statements the government made, the factual allegations, it literally said, factual allegations in the government's written materials are my factual findings. And the government made the factual allegation that this was a single modus operandi of young girls, approximately the same age as the victims. And so yeah, that that paragraph in the PSR standing alone might not be enough to show age, but that finding that the allegation that we're talking about young girls, that is, those two things do not add up to the legal predicates that you believe are present, then you lose, right? I believe that that's so yes. Okay. All right. Cases submitted. Thank you, counsel.